UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| REGO JUNCTION, INC. <br> *Plaintiff*, | ) <br> ) <br> ) | 3:20-CV-01325 (KAD) |
| v. | ) <br> ) | |
| FAMILY DOLLAR STORES OF CT, INC. <br> *Defendant*. | ) <br> ) <br> ) | SEPTEMBER 30, 2022 |

**MEMORANDUM OF DECISION**
**RE: CROSS-MOTIONS FOR SUMMARY JUDGMENT (ECF NOS. 43 & 47)**

Kari A. Dooley, United States District Judge:

Plaintiff Rego Junction, Inc. ("Plaintiff"), owns commercial property in Waterbury Connecticut which it leases to Defendant, Family Dollar Stores of Connecticut, LLC ("Defendant"). Plaintiff commenced this action in the Housing Session of the Superior Court for the State of Connecticut alleging that Defendant failed to reimburse it for real estate taxes assessed on the leased property as purportedly required under the terms of the parties' commercial lease. Defendant removed the case to this Court invoking the Court's diversity jurisdiction. Defendant brings a counterclaim against Plaintiff for breach of contract, unjust enrichment and conversion arising out of the alleged overcharging of those same real estate taxes. Pending before the Court are cross-motions for summary judgment. Both motions turn on the interpretation of a specific provision of the parties' commercial lease. For the following reasons, both motions for summary judgment are DENIED.[1]

**Standard of Review**

The standard under which courts review motions for summary judgment is well-established. "The court shall grant summary judgment if the movant shows that there is no genuine

---

[1] The Court previously advised the parties that it would be denying the motions for summary judgment and the reasons therefore.

1

dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" if it "might affect the outcome of the suit under the governing law," while a dispute about a material fact is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248 (1986). The moving party satisfies his burden under Rule 56 "by showing . . . that there is an absence of evidence to support the nonmoving party's case" at trial. *PepsiCo, Inc. v. Coca-Cola Co*., 315 F.3d 101, 105 (2d Cir. 2002) (per curiam) (internal quotation marks omitted). Once the movant meets his burden, the nonmoving party "must set forth 'specific facts' demonstrating that there is 'a genuine issue for trial.'" *Wright v. Goord*, 554 F.3d 255, 266 (2d Cir. 2009) (quoting Fed. R. Civ. P. 56(e)).

**Undisputed Facts[2]**

Plaintiff is a New York corporation that owns real property at 20 East Main Street ("the Building") in Waterbury, Connecticut. Pl. LRS ¶ 3. Defendant entered into a commercial lease to rent a portion of the Building in July of 2000 (the "Demised Premises"). *See id.* The original lease ("the Lease") was entered into with Defendant's predecessor in title, Jonsar, LLC ("Jonsar"). *See id.* at ¶ 4. Regarding the taxes on that property, the Lease contained the following relevant provision:

> Landlord shall pay all taxes, assessments and other charges which may be levied, assessed or charged against the Building including the demised premises…**Tenant shall reimburse Landlord for any increase in real estate taxes on the demised premises over and above such taxes for the year 2000 (hereinafter called the "base year")**...The increase in real estate taxes on the demised premises shall be determined by multiplying the total increase in real estate taxes on the Building property by the proportion which the square footage of the demised premises bears to the total square footage of all rentable space…

*Id.* at ¶ 5 (emphasis added).

---

[2] The facts set forth are taken from each party's Local Rule 56(a)(1) statement ("LRS") and are not in dispute unless otherwise indicated.

In February of 2005, Defendant and Jonsar extended the lease term until December 31, 2010 through an Amendment of Lease Agreement ("First Amendment"). *Id.* at ¶ 6. In July of 2015, Defendant and Jonsar entered into a Second Amendment of Lease Agreement ("Second Amendment"), which expanded the Demised Premises to add approximately 3,8000 square feet of floor area. *Id.* at ¶ 7, 8. The Second Amendment also provided that Jonsar would convert the building into a condominium form of ownership and that the Demised Premises would constitute a single unit together with an undivided interest in the common areas. *Id.* at ¶ 9. Jonsar officially converted the building into a condominium by filing a declaration on the Waterbury Land Records on August 22, 2016. *Id.* at ¶ 11. Section 11 of the Second Amendment states, in relevant part:

> "Beginning on the New Rent Commencement Date, Tenant's reimbursement to Landlord for real estate taxes, as provided for in the Lease, **will reflect an increase in Tenant's proportionate share, as calculated under the Lease, based upon expanded Demised Premises**…**Following conversion to a condominium, Tenant's proportionate share of real estate taxes shall be One Hundred (100%) percent of the real estate taxes assessed against the unit constituting the Demised Premises.**"

*Id.* at ¶ 10 (emphasis added). The Second Amendment "ratified, restated and confirmed" all otherwise unmodified lease terms. Second Amendment, ECF No. 47-7, ¶ 19.

Following the Building's conversion to a condominium, the Demised Premises became a separate parcel of property for the purposes of taxation. *See* Pl. LRS ¶ 15.[3] Accordingly, the City of Waterbury levied taxes on each individual unit rather than on the entire Building. *Id.* at ¶ 16. Plaintiff received a Limited Warranty Deed from Jonsar in December of 2018, becoming the owner of the unit. *Id.* at ¶ 21. Jonsar further assigned all its rights under the Lease, as amended, to Plaintiff. *Id.* at ¶ 22.

---

[3] Pursuant to Chapter 828 of the Connecticut General Statutes and in accordance with Section 47-204(b). *Id.* at ¶ 15.

According to the Grand List[4] for the City of Waterbury, the taxes assessed against the Demised Premises were $71,369.32 for 2017, $71,369.32 for 2018, $78,506.02 for 2019[5] and $71,369.32 for 2020.[6] *Id.* at ¶ 23. Plaintiff paid the taxes for the second half of 2017, 2018, 2019 and the first half of 2020. *Id.* at ¶ 25. Upon making the payments, Plaintiff invoiced Defendant for reimbursement according to Section 11 of the Second Amendment ("100% of the real estate taxes assessed against the unit"). *Id.* at ¶ 26. Defendant made payment in full for 2017, payment in full for the first half of 2018, partial payment for the second half of 2018, no payment for the first half of 2019, payment in full for the second half of 2019 and payment in full for the first half of 2020. *Id.* at ¶ 27. Despite demand from Plaintiff, Defendant has not paid the full amount billed for 2019. *Id.* at ¶ 28.[7]

Plaintiff brought this lawsuit seeking payment of the balance of the outstanding taxes for 2018 and 2019.[8] Plaintiff also seeks a declaratory judgment as to its rights and obligations under the Lease, specifically that Defendant is responsible for all taxes assessed against the Demised Premises. *Id.* at ¶ 29. By Counterclaim, Defendant seeks return of the portion of the payments made to Plaintiff that it deems to be in excess of the taxes owed under the Lease. Defendant also seeks a declaratory judgment as to its rights and obligations under the Lease. The current Lease is set to expire on December 31, 2025. *Id.* at ¶ 31.

---

[4] Grand List tax obligations are payable in two equal installments due in July and January of the following year. *Id.* at ¶ 24.

[5] Defendant's LRS statement attested that the real estate taxes assessed against the Demised Premises in 2019 were $71,369.32. Def. LRS, ECF No. 45, ¶ 11. However, Defendant's 56(a)(2) Statement, filed subsequently, admits that the taxes for that year were $78,506.02. Def. 56(a)(2) Statement, ECF No. 49, ¶ 23. The parties do not dispute the amount Plaintiff billed Defendant nor the amount Defendant paid Plaintiff for the 2019 taxes. *See* Pl. 56(a)(2) Statement, ECF No. 52-1, ¶ 11.

[6] The parties dispute the real estate taxes assessed against the Demised Premises in 2020. Defendant attests the amount is $78,506.02. Def. LRS at ¶ 13. The actual amount of the taxes assessed in this or any other year has no bearing on the Court's decision.

[7] The Court notes that Plaintiff's LRS does not specify whether it made a demand for the remaining balance owed for 2018.

[8] Defendant has paid the taxes assessed on the Demised Premises in years prior to 2019 as well as subsequent years, even during the pendency of this litigation. *Id.* at ¶ 30.

**Discussion**

The dispute in this case is a disagreement as to the amount of the assessed taxes the Defendant is obligated to pay under the terms of the Lease. Plaintiff asserts that the Second Amendment requires Defendant to pay 100% of the taxes assessed on the Demised Premises. Defendant asserts that it is only responsible for 100% of the differential between the current taxes and the tax assessment from 2000. In advancing their respective positions, the parties put forth competing interpretations of Section 11 of the Second Amendment, which pertains to the payment of such taxes.

Plaintiff would have the Court read Section 11 as a clear and purposeful alteration to the terms of the original Lease—that following conversion to a condominium, the tenant was responsible for paying one hundred percent of the real estate taxes assessed against the Demised Premises. Pl. Mem., ECF No. 47-1, at 9. Plaintiff relies upon the language in Section 11 that "**[f]ollowing conversion to a condominium, Tenant's proportionate share of real estate taxes shall be One Hundred (100%) percent of the real estate taxes assessed against the unit constituting the Demised Premises.**" Plaintiff asserts that this language is clear and unambiguous. Plaintiff further supports its argument by looking to the creation of the condominium through Chapter 828 of the Connecticut General Statutes. Once converted to a condominium, Waterbury stopped assessing taxes on the building as a whole and started assessing taxes on each individually owned unit. Accordingly, once the Demised Premises became a single condominium unit separately taxed by the municipal authority, the provisions of the prior lease by which the tax obligation was calculated became obsolete and the obligation to pay 100% of the taxes assessed under the Second Amendment was triggered. *See id.* at 10.

Defendant, on the other hand, would have the Court read Section 11 as a clear and unambiguous reference back to the original Lease, which provides that the tenant's tax obligations are a calculation "over and above such taxes for the year 2000." Original Lease, ECF No. 47-5, ¶ 13. Defendant cites to the language in Section 11 that provides: "Tenant's reimbursement to Landlord for real estate taxes, **as provided for in the Lease**, will reflect an increase [to 100%] in Tenant's **proportionate share, as calculated under the Lease."** (emphasis added). This language, Defendant asserts, unambiguously directs that the calculation of taxes owed is still governed by the Lease, i.e., to include the differential between the current year and the base year of 2000. Defendant argues that the phrase "proportionate share" would be rendered meaningless under Plaintiff's construction of the Lease. Thus, Defendant asserts it is only liable for any *difference* between the real estate taxes assessed against the Demised Premises each year and those assessed in the base year of 2000. This interpretation, Defendant posits, is the only one that assigns meaning to the entire lease.

A commercial lease is a contract and is subject to the same rules of construction as other contracts. *See Bristol v. Ocean State Job Lot Stores of Conn., Inc.*, 284 Conn. 1, 7, 931 A.2d 837 (2007). And the standard of review for contract interpretations is well-established: Where there is definitive contract language, the determination of the parties' intent is a question of law. *See Se. Conn. Reg'l Res. Recovery Auth. v. Dept. of Public Util. Control*, 244 Conn. 280, 290, 709 A.2d 549 (1998). The contract must be "construed to effectuate the intent of the parties, which is determined from the language used interpretated in the light of the situation of the parties and the circumstances connected with the transaction…" The contract is viewed in its entirety, with each provision read considering the other provisions. *See HLO Land Ownership Assoc. Ltd. P'ship v. Hartford*, 248 Conn. 350, 356, 727 A.2d 1260 (1999). Further, every provision must be given

effect if so possible. *See Kelly v. Figueiredo*, 223 Conn 31, 36, 610 A.2d 1296 (1992). The court is to afford contract language its common, natural, and ordinary meaning and will not import ambiguity where the ordinary meaning leaves no room for such. S*ee Niehaus v. Cowles Bus. Media, Inc.*, 263 Conn. 178, 188–89, 819 A.2d 865 (2003). A contract is ambiguous, however, if the "intent of the parties is not clear and certain from the language of the contract itself." *United Illuminating Co. v. Wisvest-Connecticut, LLC*, 259 Conn. 665, 670–71, 791 A.2d 546 (2002). "[T]he mere fact that the parties advance different interpretations of the language…does not necessitate a conclusion that the language is ambiguous." *Id.* at 670 (internal quotations omitted). But if there is "more than one reasonable interpretation, the contract is ambiguous." *Id.* at 671.

Here, the intent of the parties cannot be gleaned from the language of the Lease. Both parties advance interpretations of the Lease, specifically Section 11 of the Second Amendment, which are plausible and reasonable on their face. This is the very definition of ambiguity in a written contract. *See Parisi v. Parisi*, 315 Conn. 370, 384, 107 A.3d 920 (2015) ("If the language of the contract is susceptible to more than one reasonable interpretation, the contract is ambiguous."). The parties' intent as to their respective obligations under the Lease therefore cannot be resolved by summary judgment. The question as to the amount of taxes payable under the terms of the Lease is for the trier of fact.

**Conclusion**

For the forgoing reasons, Plaintiff's Motion for Summary Judgment is DENIED, and Defendant's Motion for Summary Judgment is DENIED.

**SO ORDERED** at Bridgeport, Connecticut, this 30th day of September 2022.

                                                 */s/ Kari A. Dooley*     \_
                                                 KARI A. DOOLEY
                                                 UNITED STATES DISTRICT JUDGE